Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRUST CAPITAL FUNDING, LLC and<br>MARK E. WESALOWSKI<br>Plaintiffs,<br><br>v.<br><br>WILLIAM P. PANAGAKO,<br>GAKO CAPITAL, LLC and<br>BRIDGE SKY CAPITAL, LLC,<br>Defendants. | Civil Action No. [to be assigned] |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

This action arises from Defendant William P. Panagako's creation and use of secret, competing entities, Defendants, Gako Capital, LLC and Bridge Sky Capital, LLC, to divert Trust Capital Funding, LLC's corporate opportunities, fees, commissions, and equity interests for his personal benefit, and from Panagako's use of TCF's funds, employees, purchased leads, underwriting, confidential information, and work product to do so, in breach of fiduciary duties he owes to Plaintiffs, and through fraudulent misrepresentations, conversion, and unjust enrichment.

Plaintiffs seek damages and equitable relief, including a temporary restraining order and preliminary injunction to freeze and preserve assets and proceeds therefrom, all bank accounts of Gako Capital, LLC and Bridge Sky Capital, LLC, all distributions traceable to diverted opportunities, and to restrain Defendants from conducting business pending final adjudication.

WCFDOCS\A0843\7000\2000157.v1-6/30/26

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

## PARTIES

1. Plaintiff, Trust Capital Funding LLC ("TCF") is a Delaware limited liability company with a principal place of business at 10 Kearney Road, Suite 102, Needham, MA 02494.

2. Plaintiff Mark E. Wesalowski ("Wesalowski") is an individual residing in Norfolk County, Massachusetts.

3. Defendant William P. Panagako ("Panagako") is an individual residing at 2 Hillock Court, Huntington, Suffolk County, New York.

4. Defendant Gako Capital, LLC ("Gako Capital") is a New York limited liability company with a principal place of business at 40 Marcus Drive, Suite 100, Melville, NY 11747.

5. Defendant Bridge Sky Capital, LLC ("Bridge Sky Capital") is a New York limited liability company with a principal place of business at 40 Marcus Drive, Suite 100, Melville, NY 11747.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is complete diversity between Plaintiffs and Defendants.

7. Venue is proper in this District under 28 U.S.C. § 1391 (a) because a substantial part of the events or omissions giving rise to the claims occurred in the Commonwealth of Massachusetts.

8. This Court has personal jurisdiction over each Defendant. Panagako has transacted business in Massachusetts for years as TCF's Manager and co-Member. Upon information and belief, Panagako, Gako Capital, and Bridge Sky Capital expressly aimed their conduct at Massachusetts by diverting transactions, fees, commissions, and equity

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

from TCF — whose underwriting, servicing, billing, collections, and management are centered at its Massachusetts headquarters — knowing that the resulting injury would be suffered by Plaintiffs in Massachusetts.

## FACTUAL ALLEGATIONS

*Background*

9. TCF is a financial lending company for small businesses.

10. TCF is governed by its Operating Agreement dated September 14, 2010, under which its two Members—Wesalowski and Panagako—each hold a 50% Membership Interest with Panagako serving as Manager.

11. The Operating Agreement is devoid of any express or implied authorization that would allow for use of TCF funds, employees or confidential information, or other TCF assets or work product for the benefit of any other person, entity, or venture other than TCF.

12. For the first six (6) years of operation, TCF operated its business solely out of its Massachusetts' office.

13. Since 2016, Wesalowski has operated and managed TCF's main office in Needham, MA ("Massachusetts office") with at least four (4) TCF employees at any given time.

14. At all relevant times as a Member of TCF, Wesalowski has been responsible for reviewing and underwriting all deals for funding approval, and:

- Managing the ongoing service of all funded deals;

- Managing all TCF billing;

- Managing all vendor payments and financial obligations of TCF;

- Managing all legal matters and litigation matters on behalf of TCF;

- Managing all collection issues on delinquent and defaulted accounts;

WCFDOCS\A0843\7000\2000157.v1-6/30/26

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

- Managing the filing of TCF tax returns and maintaining tax compliance; and

- Managing all of TCF's exterior business relationships, including TCF's largest referral source.

15. At all relevant times as a Member of TCF, Panagako has been responsible for cultivating investor relationships and managing the internal sales floor for TCF.

16. At all relevant times, Panagako has also had sole control over employment payroll services. In that role Panagako could raise or lower compensation and did so without notifying or consulting Wesalowski.

17. Panagako was adjusting salaries without discussion or authorization and not taking into account the respective duties and responsibilities of the partners.

18. Only recently, and in connection with the parties' deadlock meeting, did Panagako provide Wesalowski with administrative access to TCF's payroll services.

19. Since 2016, Panagako has also operated and managed TCF's sales office located at 40 Marcus Drive, Suite 100, Melville, NY 11747 ("New York office") with at least eight (8) employees.

20. TCF also services third-party investor capital and it has a fiduciary duty to its investors.

21. As members of TCF, Panagako and Wesalowski also have a fiduciary duty to their investors.

*Panagako's Waste of TCF assets*

22. Since 2016, the New York office under Panagako's management has continually run at a deficit each year.

23. At all relevant times, the Massachusetts office has operated at a profit.

WCFDOCS\A0843\7000\2000157.v1-6/30/26

· Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

24. Panagako was absent from TCF while on extended vacations during the entire summers of 2024 and 2025.

25. As a result of Panagako's extensive vacations, he left the New York office without any supervision or management, thereby breaching his duty of care to TCF.

26. As a result of prolonged Panagako's absence in 2024 and 2025, Wesalowski was forced to maintain the New York office expenses while said office continued to operate at a loss each month.

27. In early 2025, Panagako and Wesalowski agreed to close the New York office.

28. Since then, however, Panagako has refused or otherwise failed to close the New York office despite repeated requests by Wesalowski.

29. Panagako's refusal to close the New York office has wasted TCF's assets and income causing Plaintiffs financial harm.

30. In 2025, the New York office annual income was approximately $312,516 with expenses totaling approximately $1,170,978 for net loss of approximately $858,462.

31. In contrast, in 2025 the Massachusetts office annual income was approximately $1,168,020 with expenses totaling approximately $932,915 for net profit of approximately $235,105.

32. As a result of Panagako's management of the New York office, TCF operated at a combined net loss in 2025 of approximately $623,357.

33. Despite Panagako's mismanagement of the New York office, he continued to pay himself nearly identical to Wesalowski's income despite the New York office's continued operating deficiencies.

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

34. Panagako has also unilaterally withdrawn or otherwise transferred large amounts of TCF's funds, totaling in excess of $200,000, without any partnership discussion, vote, or authorization.

35. Section 11 of the Operating Agreement permits distribution only of cash "which is not reasonably necessary for the operation of the LLC," and only in proportion to the Members' capital accounts. At the time of Panagako's withdrawals, TCF was operating at a substantial combined net loss and remained obligated on an SBA loan, and the withdrawn funds were reasonably necessary for TCF's operations. The withdrawals therefore were not authorized by, and violated, the Operating Agreement.

36. Panagako made these withdrawals unilaterally and without any prior discussion with, or approval from, Wesalowski, and frequently did so at times when Wesalowski was unavailable, including during Wesalowski's planned family vacations.

37. Rather than discuss the withdrawals with Wesalowski, Panagako simply instructed a TCF controller to transfer funds to himself and to transfer an equal amount to Wesalowski.

38. TCF holds title to a BMW X5 M motor vehicle (the "Vehicle") that Panagako uses for his personal benefit, and TCF is currently making the loan payments on the Vehicle.

39. Since at least 2023, Panagako has subleased a private office and a conference room within TCF's New York office to attorney Anthony C. Curcio and his law firm, Curcio Law PLLC, which publicly lists TCF's New York office address, 40 Marcus Drive Suite 100, Melville, New York, as its own business address.

40. Panagako has collected the rent from that sublease himself and, upon information and belief, has retained the rental payments personally; no rental income from the sublease of TCF's New York office space has been paid or accounted for to TCF.

· Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

41. Upon information and belief, Panagako has subleased other space within TCF's New York office to additional third parties as well and has likewise personally retained those rental payments without disclosure or accounting to TCF or Wesalowski.

42. TCF and Wesalowski have suffered significant financial loss due to Panagako's mismanagement of New York office and unauthorized withdrawals from TCF.

43. Panagako's actions have threatened the Plaintiffs' ability to repay an SBA loan of which Wesalowski is personally liable.

### Defendants' Diversion of TCF business

44. Beginning in Summer of 2024, Panagako began breaching his duty of care and duty of loyalty to TCF by secretly engaging in separate business financial lending deals.

45. In or about June 2024, Panagako and a TCF W2 employee engaged with prospective customer, Game Play Network for business financial lending.

46. During said time, Panagako directed TCF W2 employees to use Panagako's private email instead of his TCF email, and instructed TCF W2 employees to use their personal email accounts instead of their TCF email accounts, to communicate with Game Play Network.

47. During said time, Panagako also falsely represented to TCF employees that Wesalowski was aware of the prospective deal with Game Play Network.

48. While serving as TCF's Manager and co-member, Panagako created Bridge Sky Capital on or about September 20, 2024 using TCF's New York office address as Bridge Sky Capital's address.

49. Panagako never notified Plaintiffs that he had created Bridge Sky Capital.

· Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

50. Upon information and belief, Defendant, Bridge Sky Capital was created by Panagako as a business financial lending company to divert Merchant Cash Advance ("MCA") transactions away from TCF.

51. Upon information and belief, Panagako created Bridge Sky Capital to sign up lenders directly and to circumvent and divert commissions that would otherwise have been earned by TCF.

52. Panagako offered a TCF W2 employee equity in Bridge Sky Capital if the employee would place his name on referral and commission agreements with lenders.

53. In offering this equity, Panagako represented to the TCF W2 employee that he was forming Bridge Sky Capital together with a large TCF investor.

54. Panagako asked the TCF W2 employee to contribute 20,000 Game Play Network warrants to Bridge Sky Capital as purported equity in the company.

55. Upon information and belief, no equity in Bridge Sky Capital was ever provided to the employee, and the large TCF investor was never involved in Bridge Sky Capital, leaving Panagako as the sole owner of the warrants and the company.

56. Beginning in September 2024, Panagako directed TCF employees to use their names to enroll Merchant Cash Advance transactions through Bridge Sky Capital so as to keep Panagako's relationship with said entity a secret from Wesalowski.

57. Panagako directed and/or permitted TCF employees to receive commissions paid by Bridge Sky Capital and/or Gako Capital on business financial lending deals that were originated through TCF.

WCFDOCS\A0843\7000\2000157.v1-6/30/26

· DocuSign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

58. As a result, Panagako and Bridge Sky Capital have actively diverted corporate opportunities, fees, commissions, and equity away from TCF causing significant financial loss to Plaintiffs.

59. TCF was never paid any origination fees, commissions, or other compensation on these diverted transactions, further harming TCF and the Plaintiffs, while Panagako and Bridge Sky Capital retained the fees and commissions derived from TCF's opportunities and resources.

60. From June 2024 through December 2025, Panagako continued to engage secretly with Game Play Network to secure a financial lending deal without Plaintiffs' knowledge.

61. While serving as TCF's Manager and co-member, Panagako created Gako Capital on or about October 21, 2025 using TCF's New York office address as Gako Capital address.

62. Upon information and belief, Defendant, Gako Capital was created by Panagako as a business financial lending company to directly compete with TCF.

63. Panagako never notified Plaintiffs that he had created Gako Capital.

64. On or before November 2025, Panagako funded a business financial lending deal with Luxe Pools in the approximate amount of $900,000 through either Bridge Sky Capital or Gako Capital instead of TCF ("Luxe Pools deal").

65. The Luxe Pools deal was sourced by a TCF employee through sales leads that TCF had purchased and paid for.

66. TCF underwrote the Luxe Pools deal and, in doing so, incurred the costs of credit checks, background checks, and employee labor in evaluating the transaction.

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

67. Panagako used the leads, credit and background information, underwriting, and work product developed and paid for by TCF to fund the Luxe Pools deal through Bridge Sky Capital and/or Gako Capital and to enrich himself, rather than TCF.

68. The Luxe Pools deal resulted in commissions and fees of at least $67,500.

69. Panagako paid the TCF employee who sourced the Luxe Pools deal a commission through Gako Capital.

70. Panagako instructed that TCF employee not to disclose the Gako Capital commission to Wesalowski or to any other TCF employee.

71. As a result of Luxe Pools deal, Defendants actively diverted corporate opportunities, fees, commissions, and equity away from TCF causing significant financial loss to Plaintiffs.

72. In or about December 2025, Panagako and Gako Capital funded the business financial lending deal with Game Play Network resulting in Panagako receiving 365,000 warrants at $4.00/share exercise price and approximately $82,500.00 in origination fees and commissions diverted to Gako Capital instead of TCF resulting from a $1,100,000 loan ("Game Play Network deal").

73. Upon information and belief, Game Play Network is in process of selling at approximately $30/share, resulting in Panagako's warrants worth approximately $9,490,000.

74. As a result of the Game Play Network deal, Panagako and Gako Capital actively diverted corporate opportunities, fees, commissions, and equity away from TCF causing significant financial loss to Plaintiffs.

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

75. Upon information and belief, Panagako and Gako Capital have also failed to service the Game Play Network deal as they cannot pull payments despite the borrower actively attempting to pay.

76. Upon information and belief, TCF's largest investor, VSS Capital Partners was included as part of the Game Play Network deal, and it will expect its respective payments.

77. Panagako and Gako Capital's failure to service the loan on the Game Play Network deal threatens Plaintiffs' ongoing relationship with VSS Capital Partners, which would result in catastrophic financial harm to Plaintiffs.

78. At all relevant times, Panagako concealed the creation of Bridge Sky Capital and Gako Capital from the Plaintiffs.

79. At all relevant times, Panagako fraudulently used TCF assets and employees to divert business away from TCF and towards Panagako, Bridge Sky Capital and Gako Capital.

80. As a result of Panagako actions, the Defendants were unjustly enriched.

81. Pursuant to the Operating Agreement executed by Wesalowski and Panagako, the Members attended a deadlock meeting on May 11, 2026 in an attempt to resolve their disputes and disagreements. The meeting proved futile.

## CLAIMS FOR RELIEF

### Count I – Breach of Fiduciary Duty (Against William P. Panagako)

82. Plaintiffs reallege paragraphs 1–81 as if fully set forth herein.

83. As TCF's Manager and 50% Member, Panagako owed fiduciary duties of loyalty, care, and candor to TCF and to Wesalowski, including the duty not to usurp corporate opportunities and to act in the best interests of TCF.

WCFDOCS\A0843\7000\2000157.v1-6/30/26

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

84. Panagako breached his fiduciary duties by mismanaging the New York office and unilaterally withdrawing large sums of TCF's funds without authorization and in violation of Section 11 of the Operating Agreement, and by collecting and personally retaining rental income from subleases of TCF's New York office space.

85. Panagako also breached his fiduciary duties by secretly forming and operating competing entities from TCF's address and diverting corporate opportunities, fees, commissions, and equity of TCF to those entities and by using TCF's funds, employees, purchased leads, underwriting, credit and background information, and work product to source, underwrite, and fund transactions for the benefit of himself, Bridge Sky Capital, and Gako Capital.

86. As a direct and proximate result, Plaintiffs suffered damages.

### Count II – Fraudulent Misrepresentation (Against William P. Panagako)

87. Plaintiffs reallege paragraphs 1–86 as if fully set forth herein.

88. In connection with the diversion of TCF opportunities and assets, including the MCA transactions, Luxe Pool deal and the Game Play Network deal, Panagako made material misrepresentations and omissions regarding 1) his creation and use of competing entities, 2) the true counterparty to diverted transactions, and 3) the beneficial owner of fees and warrants.

89. Plaintiffs relied on Panagako's misrepresentations and omissions and as a direct and proximate result, the Plaintiffs suffered damages.

### Count III – Conversion (Against All Defendants)

90. Plaintiffs reallege paragraphs 1–89 as if fully set forth herein.

WCFDOCS\A0843\7000\2000157.v1-6/30/26

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

91. Defendants wrongfully exercised dominion and control over specific, identifiable TCF property, including fees, commissions, and equity interests associated with TCF opportunities, by capturing them in the name of Gako Capital and Bridge Sky Capital.

92. Defendants' conduct constitutes conversion, causing significant financial damage to Plaintiffs.

93. As a result, the Plaintiffs suffered damages.

### Count IV – Unjust Enrichment (Against All Defendants)

94. Plaintiffs reallege paragraphs 1–93 as if fully set forth herein.

95. Defendants were enriched by retaining fees, commissions, and equity obtained from corporate opportunities originating with TCF, at Plaintiffs' expense, under circumstances that make such retention unjust.

96. Equity requires restitution and/or disgorgement of the benefits wrongfully obtained.

97. As a result of Defendants' actions, the Plaintiffs suffered damages.

### APPLICATION FOR INJUNCTIVE RELIEF AND TEMPORARY RESTRAINING ORDER

1. Plaintiffs seek immediate injunctive relief to preserve the status quo and prevent irreparable harm, including dissipation of the Game Play Network deal warrants or proceeds, and continued diversion of TCF assets and opportunities.

2. Specifically, Plaintiffs request that the Court enter a Temporary Restraining Order and, after hearing, a Preliminary Injunction providing that, pending final adjudication:

a) Defendants are enjoined from exercising, transferring, selling, assigning, pledging, encumbering, or otherwise disposing of any warrants issued to or held for the benefit of Panagako and/or Gako Capital, and any shares or proceeds derived therefrom;

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

b) All bank accounts of Gako Capital and Bridge Sky Capital which accounts upon information and belief hold proceeds traceable to transactions diverted from TCF and are subject to constructive trust and disgorgement, are frozen, with Defendants enjoined from withdrawing, transferring, or dissipating any funds therein, except as permitted by Court order;

c) Panagako's access to TCF employee payroll services will be removed and Wesalowski shall be granted access;

d) Panagako is enjoined from accessing, transferring or otherwise using any TCF funds without express written permission from Wesalowski;

e) Defendants are enjoined from making or receiving any distributions from Gako Capital or Bridge Sky Capital and from transferring any assets traceable to diverted TCF opportunities;

f) Defendants are enjoined from conducting any further business through Gako Capital or Bridge Sky Capital that uses or involves TCF-originated opportunities, assets, confidential information, or relationships, pending a full accounting and adjudication on the merits;

g) Remove Defendant Panagako from all payroll responsibilities.

h) Defendants shall preserve all documents, communications, and records relating to all accounts of Gako Capital and Bridge Sky Capital.

i) Plaintiffs further request that the Court order an expedited accounting from Defendants of all deals, fees, commissions, equity, and proceeds handled through Gako Capital, Bridge Sky Capital, or any other affiliated vehicle using TCF

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

opportunities or resources and of all rents and other payments collected from any sublease or license of TCF's office space.

j) Panagako is enjoined from transferring, encumbering, or otherwise disposing of the BMW X5 M motor vehicle titled to and financed by TCF, and shall either (i) personally assume and pay all loan payments, insurance, and other expenses associated with the Vehicle if he wishes to continue using it, or (ii) surrender the Vehicle to TCF so that TCF may sell it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and award the following relief:

a) On Count I (Breach of Fiduciary Duty), compensatory damages in an amount to be determined at trial or in arbitration, together with equitable relief including disgorgement and constructive trust over diverted assets, including warrants and any proceeds;

b) On Count II (Fraudulent Misrepresentation), compensatory and equitable relief, including rescission, disgorgement, and constructive trust, in amounts to be determined at trial or in arbitration;

c) On Count III (Conversion), compensatory damages for converted property, and equitable relief including replevin and/or constructive trust over identifiable funds, securities, and proceeds;

d) On Count IV (Unjust Enrichment), restitution and disgorgement of all benefits unjustly retained, including fees, commissions, warrants, shares, and proceeds;

' Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

e) The Court issue a Temporary Restraining Order and, after hearing, Preliminary Injunction as set forth above;

f) An order requiring an expedited accounting of all diverted opportunities, fees, commissions, warrants, shares, distributions, and proceeds; and

g) Costs, and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,
The Plaintiffs,
Trust Capital Funding LLC and
Mark E. Wesalowski,

By their attorneys,

*/s/ Michael B. Cosentino*
Michael B. Cosentino (BBO# 558036)
Susan D. Novins (BBO#554598)
Wilchins Cosentino & Novins LLP
250 First Avenue, Suite 302
Needham, MA 02494
Tel. No. (781) 235-5500
mcosentino@wcnllp.com
snovins@wcnllp.com

Dated: June 30, 2026

WCFDOCS\A0843\7000\2000157.v1-6/30/26

Docusign Envelope ID: B79669E0-5EA0-8722-8098-869F192F731A

## VERIFICATION

I, Mark E. Wesalowski, individually and in my capacity as a member and duly authorized representative for Trust Capital Funding, LLC depose and upon my oath do hereby state, under the pains and penalties of perjury that I, have read the foregoing Verified Complaint in its entirety, that I have actual knowledge of the facts stated therein, that they are true statements, excepting only the statements made on information and belief which were alleged in good faith and no material facts have been omitted from this Verified Complaint.

Signed by:

*Mark Wesalowski*

98554422DF374F4...

_____

Mark E. Wesalowski

6/30/2026

Dated: June ____, 2026

WCFDOCS\A0843\7000\2000157.v1-6/30/26